ANTHONY WROBEL vs. GENERAL ACCIDENT FIRE AND LIFE
ASSURANCE CORPORATION, LIMITED.

Worcester.   September 26, 1934. — October 24, 1934.

Present: RUGG, C.J., CROSBY, PIERCE, FIELD, & LUMMUS, JJ.

*Insurance,* Accident.   *Practice, Civil,* Findings by judge.

A policy of insurance against accident issued to a draw frame operator
and spinner contained an "insuring clause" stating that the policy
insured against "the effects resulting directly and exclusively of all
other causes, from bodily injury sustained . . . solely through Exter-
nal, Violent and Accidental Means . . . hereinafter referred to as
'such injury'"; and further provided that, if "'such injury' alone"
should "wholly and continuously disable the Insured from performing
any and every duty pertaining to his occupation" from the date of
the injury, the insurer would pay a certain amount per month "for
the continuous period of total loss of time caused thereby," and that.
"if 'such injury' shall not from date of the accident wholly disable
the Insured but shall within sixty days thereafter wholly disable him,
or shall, commencing on date of the accident or immediately follow-
ing total loss of time, prevent him from performing work substantially
essential to the duties of his occupation," the insurer would "pay for
the continuous period of loss of time caused thereby, not exceeding
six consecutive months, one-half of" the indemnity. *Held,* that
    (1) There was no incompatibility between the several provisions of
the policy;
    (2) There was nothing illegal about the partial disability clause.
The insured under the policy above described, solely through external,
violent and accidental means, sustained a fracture of the middle
phalanges of the index and second fingers of the right hand.   Three
weeks after the accident there appeared on his right wrist a bunch
termed a neurofibroma.   An action upon the policy was heard by a
judge without a jury, who, upon conflicting evidence, found that the
accident did not cause, nor have causal relation to, the neurofibroma;
that the median and ulna nerves were affected and, at the time of
the hearing more than a year after the injury, the fingers which were
broken were stiff, the thumb was affected, and the plaintiff was
unable to perform the work of a draw frame operator and spinner;
and that the "injury received totally disabled the plaintiff for six
months and partially disabled him for an additional six months."
The judge refused to find that the "disabling injury of the index
finger . . . constitutes in itself, and aside from the wrist condition a
total disability which prevented the plaintiff from" doing his work as
draw frame operator and spinner; found for the plaintiff, and assessed

damages for a total disability for six months and partial disability for an additional six months. Upon exceptions by the plaintiff, it was *held*, that

(1) The finding of the trial judge in effect was that the plaintiff's condition after twelve months following the accident was not a result of a bodily injury within the description in the policy, and was warranted;

(2) It was a question of fact whether on all the evidence the neurofibroma had any causal connection with the injury; and the finding that it did not have such connection could not be pronounced without support in the evidence;

(3) In determining the lengths of the periods of total and of partial disability, it was necessary for the trial judge to eliminate the neurofibroma as a factor;

(4) While such determination in the circumstances could not be made with mathematical accuracy, and a decision was difficult, it was not impossible but could be made by resort to practical common sense and judicial experience;

(5) The finding as to such periods could not be held unwarranted as matter of law.

CONTRACT. Writ dated May 27, 1932.

In the Superior Court, the action was heard by *W. A. Burns*, J., without a jury. The judge refused the following request by the plaintiff: "Upon all the evidence, the disabling injury of the index finger, caused by the fracture while at work, constitutes in itself, and aside from the wrist condition a total disability which prevented the plaintiff from performing his duties as a frame-drawer and spinner."

Other material evidence, and findings and rulings by the judge, are described in the opinion. There was a finding for the plaintiff in the sum of $680.99. The plaintiff alleged exceptions.

*E. A. Ryan*, for the plaintiff.

*S. B. Milton*, for the defendant.

RUGG, C.J. This case comes before us on the exceptions of the plaintiff, who seeks to recover upon a policy of accident insurance. The trial judge made these findings: The defendant issued to the plaintiff a policy of accident insurance. The plaintiff suffered an injury solely through external, violent and accidental means on March 27, 1931. That injury consisted in the fracture of the middle phal-

anges of the index and second fingers of the right hand. The occupation of the plaintiff was draw frame operator and spinner. Three weeks after this there appeared on his right wrist a bunch termed a neurofibroma. For its removal two operations were performed, the first in September, 1931, and the second in November, 1932. The median and ulna nerves were affected and at the time of the trial the fingers which were broken were stiff, the thumb was affected and the plaintiff was unable to perform the work of a draw frame operator and spinner. The accident did not cause, nor have causal relation to, the neurofibroma. The "injury received totally disabled the plaintiff for six months and partially disabled him for an additional six months." A general finding was made for the plaintiff and damages in accordance with the policy were assessed on the basis of the findings.

The chief controversy at the trial appears to have been whether the neurofibroma resulted from the injury which broke the fingers, or from an independent cause. The testimony on this point came chiefly from physicians and surgeons and was in considerable conflict. The trial judge examined the right hand of the plaintiff. There was evidence that the fractures of the fingers were comminuted and not compound and did not extend into the joint, and that there was no surface disturbance or injury.

These findings mean that the condition of inability of the plaintiff at the time of the trial and for a period subsequent to six months immediately following the injury to perform the work of his employment was not due to the accident but was due to the neurofibroma, which appeared three weeks after the accident and had no causal connection with the accident. Since this is an action at law, these findings must stand and be accepted as true provided there is any evidence to support them. *Moss* v. *Old Colony Trust Co.* 246 Mass. 139, 143.

The defendant by its policy of insurance described the plaintiff as a "Draw frame operator, and Spinner by occupation." Other parts of the policy material to the pres-

ent exceptions are these: "Part 1 — The Insuring Clause. This policy insures against — (1) the effects resulting directly and exclusively of all other causes, from bodily injury sustained during the life of this policy solely through External, Violent and Accidental Means (excluding suicide, sane or insane), said bodily injury so sustained being hereinafter referred to as 'such injury.'" "Part 3 — Monthly Indemnity. Total Disability. Sec. (a) If 'such injury' alone shall from date of the accident wholly and continuously disable the Insured from performing any and every duty pertaining to his occupation, the Corporation will pay for the continuous period of total loss of time caused thereby, accident indemnity at the rate per month specified in Part 1; Partial Disability. Sec. (b) Or, if 'such injury' shall not from date of the accident wholly disable the Insured but shall within sixty days thereafter wholly disable him, or shall, commencing on date of the accident or immediately following total loss of time, prevent him from performing work substantially essential to the duties of his occupation, the Corporation will pay for the continuous period of loss of time caused thereby, not exceeding six consecutive months, one-half of said Monthly Accident Indemnity."

The plaintiff excepted to the refusal of the trial judge to grant certain requests for rulings and findings of fact, to the granting of one request for ruling presented by the defendant, and to the inadequacy of the damages awarded.

The denial of these requests, so far as they ask for findings of fact, presents no question of law. A trial judge in an action at law is not required to pass upon such requests. His duty is to pass upon relevant requests for rulings of law and to decide the case. *Davis* v. *Boston Elevated Railway*, 235 Mass. 482, 494–495.

The clauses quoted from the policy are parts of a single contract. They are to be construed as constituting a contract between the parties intended to be a complete and harmonious instrument designed to accomplish a reasonable end. Every word and phrase must be presumed to have

been employed with a purpose and must be given meaning and effect whenever practicable. *Clark* v. *State Street Trust Co.* 270 Mass. 140, 155.

The insuring clause in express and indubitable words confines the liability of the defendant to such consequences as come to the plaintiff "directly and exclusively of all other causes, from bodily injury" sustained as prescribed in the policy. It imposes no liability upon the defendant for harm befalling the plaintiff from a cause other than that stated. The insuring clause, therefore, does not afford protection to the plaintiff against such injury as he suffered from the neurofibroma because (according to the findings) that was not causally connected with the injury received by him on March 27, 1931. Thus the ground of liability on the part of the defendant is specified in unambiguous language. The extent of the liability of the defendant to the plaintiff arising from the specified injury is divided into two classes: (1) that resulting in total disability and (2) that resulting in partial disability. In both classes it is a condition precedent to recovery that the disability must arise from an injury in conformity to the terms specified in the insuring clause, and not from some other cause. In order that the disability may be total, it must commence immediately on the date of the accident, operate continuously, and incapacitate the insured utterly from performing his occupation. The disability is partial when it prevents the insured from performing work substantially essential to the duties of his occupation. There was no error of law disclosed on this record in the interpretation of the policy by the trial judge. There is no incompatibility between the several provisions of the policy. There is nothing illegal about the partial disability clause. See G. L. (Ter. Ed.) c. 175, § 108; *O'Roak* v. *Lloyds Casualty Co.* 285 Mass. 532, 535–536.

The fundamental question is whether there was evidence to support the finding that the effects of the bodily injury received by the plaintiff on March 27, 1931, "directly and exclusively of all other causes" produced "total disability" for a period of six months and "partial disability" for a

subsequent additional six months, and not for any longer periods. It was a question of fact whether on all the evidence the neurofibroma had any causal connection with the injury. The finding that it did not have such connection cannot be pronounced to be without support in the evidence. That fact being established, it remained for the trial judge to find the length of time of total disability of the plaintiff due "directly and exclusively of all other causes" to the broken fingers. There was ample evidence that the neurofibroma was an important, if not the exclusive, cause of the present total disability of the plaintiff. Rejecting that factor, the extent of total disability due to the fractures of the fingers was a question of fact. There was testimony in detail as to those fractures. In the nature of things there could hardly be mathematical accuracy as to the period of total or partial incapacity due to that cause when the extent of that incapacity was complicated by the operation of another cause. The decision of that question doubtless was difficult. It depended in part at least upon matters uncertain, contingent, and based upon opinion. But all the physical facts were in evidence. The trial judge saw the plaintiff and examined his fingers and hand. It was a question to be settled by resort to practical common sense and judicial experience. It was no more difficult than are many questions of fact which must be decided. *Maynard* v. *Royal Worcester Corset Co.* 200 Mass. 1, 8. *Cross* v. *Sharaffa*, 281 Mass. 329. *Parker* v. *Levin*, 285 Mass. 125, 129. *Potier* v. *A. W. Perry, Inc.* 286 Mass. 602, 606–607. *Story Parchment Co.* v. *Paterson Parchment Paper Co.* 282 U. S. 555, 563–564. The finding that the injury to the index finger due exclusively to the accident did not prevent the plaintiff from doing his work as draw frame operator and spinner after the lapse of six months from the injury was close on the evidence, but it cannot be held unwarrantable as matter of law. There was no inconsistency in the findings of fact.

Several of the plaintiff's requests for rulings of law were not sound because they did not confine the disability of the plaintiff to the "effects resulting directly and exclusively

of all other causes, from bodily injury sustained" by him under the conditions stated in the policy; therefore, there was no error in their denial. That was the only disability for which the plaintiff could recover against the defendant. He could not recover for disability caused by the neurofibroma, which according to the findings had no causal connection with his injury. There was no error in denying the requests of the plaintiff for rulings of law. There was no error in granting the request of the defendant for a ruling of law which was in substance framed in the terms of the partial disability clause of the policy. The case of *Rezendes* v. *Prudential Ins. Co. of America*, 285 Mass. 505, 511–512, is quite distinguishable in its facts from the case at bar.

*Exceptions overruled.*