HENRY BOUVIER *vs.* CRAFTSMAN INSURANCE COMPANY.

Worcester.   September 21, 1936. — March 9, 1938.

Present: RUGG, C.J., FIELD, DONAHUE, & LUMMUS, JJ.

*Insurance*, Disability, Period covered by policy, Proof of loss.   *Time. Words*, "Until."

A policy of disability insurance which stated that it took effect at noon "on the day" it was dated, November 21, that the payment of the initial premium would carry the insurance "until" February 1, and that, with the company's consent, it might be renewed "on any premium date, by the payment" of a premium "in advance," and which was issued upon an application providing that "the next premium" would "be due" February 1, was in force at 4 P.M. on February 1.

Under the provisions of a policy of disability insurance requiring written proof of the character and extent of loss as to which a claim was made, there could not be recovery for loss due to partial disability where no proof of loss by reason of the partial disability was filed with the insurer, although a proper proof had been filed as to a preceding total disability which had resulted from the same injury.

Under the provisions of a policy of disability insurance that there should be indemnity if injuries should "within fourteen days after . . . the accident, wholly and continuously disable . . . the insured," there could be no recovery for total disability which began after a period of three months of partial disability following a former period of total disability resulting from the same accident.

CONTRACT. Writ in the Superior Court dated October 19, 1933.

The action was heard by *Broadhurst,* J., upon the report of an auditor whose findings of fact were to be final; there was a "finding" for the plaintiff in the sum of $598.58, and the defendant alleged exceptions.

*S. B. Milton,* (*C. C. Milton & R. C. Milton* with him,) for the defendant.

*F. M. Jablonski,* for the plaintiff.

FIELD, J. This is an action of contract to recover disability benefits under a policy of insurance issued by the defendant to the plaintiff, dated November 21, 1932. The case was referred to an auditor whose findings of fact were to be final. In his report the auditor found that the plaintiff sustained injuries, such as are described in the policy, at 4 P.M., eastern standard time, on February 1, 1933, and made findings with respect to damages in the event that the plaintiff is entitled to recover in this action. Both the plaintiff and the defendant moved for judgment on the report. The judge ruled that "the policy declared on was in effect when the plaintiff was injured" and that "the plaintiff is entitled to recover the sum of the several amounts found by the auditor to be payable for all the periods of total and partial disability suffered by plaintiff and for hospitalization and medical attendance," and found for the plaintiff in the sum of $598.58 — being $505 and interest from the date of the writ. The defendant excepted.

The contentions of the defendant are (a) that the plaintiff

cannot recover in this action for the reason that the policy was not in effect when he was injured, and (b) that even if the plaintiff can recover in this action the amount of the finding in his favor was excessive.

First. The policy was in effect when the plaintiff was injured at 4 P.M., eastern standard time, on February 1, 1933.

The policy was issued to the plaintiff on November 21, 1932, and is so dated, and the plaintiff paid the initial premium. No other premium has ever been offered, tendered or paid by the plaintiff to the defendant upon the policy. The policy contains the following provision: "This policy is issued in consideration of the statements, agreements and warranties contained in the application, a copy of which is endorsed hereon or attached hereto, and hereby made a part of this contract, and of the payment of an initial premium of $11.70 which will carry the insurance hereunder from the date of the policy until February 1st 1933 and may, with the consent of the Company, be renewed annually, semi-annually, or quarterly on any premium due date, by the payment in advance of an annual, semi-annual or quarterly premium." The policy contains also a provision that "If default be made in the payment of the agreed premium for this policy, the subsequent acceptance of a premium by the Company or by any of its duly authorized agents shall reinstate the policy, but only to cover accidental injury thereafter sustained and such sickness as may begin more than ten days after the date of such acceptance." And the policy provides that "This policy shall take effect at twelve o'clock noon, standard time, of the place where the Insured resides, on the day the policy is dated." The application, a copy of which is attached to the policy, provides that "the next premium" will "be due" February 1, 1933.

The policy and the application must be construed together. *Adamaitis* v. *Metropolitan Life Ins. Co.* 295 Mass. 215, 219. Where the language is of doubtful meaning every doubt is to be resolved against the insurer and in favor of the insured. *Edward Rose Co.* v. *Globe & Rutgers Fire Ins. Co.* 262 Mass. 469, 473. It "may be assumed . . .

that the preposition 'until,' like 'from,' or 'between,' generally excludes the day to which it relates," but "such general rules of construction must yield to the intention of the parties, apparent upon the face of the whole instrument, as applied to the subject matter." *Kendall* v. *Kingsley,* 120 Mass. 94, 95. See also *Atkins* v. *Boylston Fire & Marine Ins. Co.* 5 Met. 439. *Chamberlain & Burnham, Inc.* v. *Cohn,* 261 Mass. 322, 326. Similarly "fractions of a day will be disregarded unless special circumstances or clear expression of intent to the contrary appears." *Loza* v. *Osmola,* 279 Mass. 220, 222.

Though the policy provides that the initial premium "will carry the insurance . . . until February 1st 1933," there are indications on the face of the policy, including the application, that the parties intended that no part of February 1, 1933, should be excluded from the period for which the initial premium would carry the insurance.

The provision for renewal "on any premium due date," coupled with the fixing of the date on which "the next premium" will "be due" as February 1, 1933, imports that the insured, with the consent of the insurer, could have obtained a renewal of the policy continuing it in full operation — as distinguished from a reinstatement of the policy for the future only — by the payment of a premium on February 1, 1933. And, in the absence of any indication to the contrary, the insured would have the entire calendar day of February 1, 1933, in which to make such payment. There is no such indication in the policy unless it is to be found in the provision that the policy took effect at noon "on the day the policy is dated." With respect to the computation of time under a policy containing a similar provision, noon has been referred to as the "dawn of the insurance day." *Corey* v. *National Ben Franklin Fire Ins. Co.* 284 Mass. 283, 287. Compare, however, *Walker* v. *John Hancock Mutual Life Ins. Co.* 167 Mass. 188. But we think it would be a strained construction — unfavorable to the insured — of the provision in the policy, fixing February 1, 1933, without limitation, as the day on which the next premium would be due, to hold that this premium

must be paid before noon of that day in order to renew the policy. Indeed, if noon is regarded as the "dawn of the insurance day," noon on February 1, 1933, would be the beginning of the day on which the next premium would become due, which would not expire until noon on February 2, 1933. We do not, however, intimate that this would be a correct construction.

The language of the provision for renewal of the policy imports also that the initial premium carried insurance through the next premium due date. Renewal could be obtained with the consent of the insurer "on any premium due date" by a payment of the next premium "in advance." Whether or not the language imports that payment may be made before the next premium due date, clearly payment before that date is not required. And though payment "in advance" conceivably might include payment on the first day of the next quarter or other period, it more naturally means payment before that period begins. Since payment "in advance" can be made on the "premium due date" it follows that this day — the entire day of February 1, 1933 — is included within the period covered by the initial premium. This construction of the language is in conformity with the principle that renewal of the policy continues it in force without interruption. Doubtless the parties might have agreed that such a result would follow from a payment of the next premium after the expiration of the period covered by the initial premium by giving to such payment retroactive effect. But a construction of the language actually used, whereby the "premium due date" would be excluded from the period covered by the initial premium and continuance of the policy in force without interruption would depend upon a retroactive effect of the payment of the next premium, would leave the insured in a position where, though he complied strictly with the requirements for renewal of the policy, he would be without protection after the expiration of the period covered by the initial payment until he paid the next premium. We think that an interpretation is not to be given to the policy which would require the insured to pay the

next premium before its due date, or even before noon of that day, to secure such protection. See *Isaacs* v. *Royal Ins. Co.* L. R. 5 Ex. 296.

Second. The amount of the finding for the plaintiff was excessive. The policy provides for indemnity for total disability resulting from accident, partial disability so resulting, and an extra indemnity for necessary confinement in a hospital during total disability.

The auditor found that "Because of the accident the plaintiff was totally disabled from 4:00 P.M. eastern standard time on February 1, 1933 to June 1, 1933, was confined to the Worcester City Hospital from shortly after 4:00 P.M. on February 1, 1933 to March 16, 1933, was partially disabled from June 1, 1933 to September 12, 1933, and was again totally disabled from September 12, 1933 to November 7, 1933, being confined to Worcester City Hospital from September 12, 1933 to September 19, 1933," and summarized the "possible payments" to the plaintiff under the policy as follows: "February 1st to June 1st — Total disability $240.00   February 1st to March 16th — Hospitalization 46.00   June 1st to September 12th — Partial disability 102.00   September 12th to November 7th — Total disability 110.00   September 12th to September 19th — Hospitalization 7.00," aggregating $505.

1. The defendant makes no contention that, if the policy was in force at the time of the injury, the plaintiff is not entitled to recover indemnity for total disability from February 1, 1933, to June 1, 1933, and hospitalization from February 1, 1933, to March 16, 1933, aggregating $286.

2. The plaintiff is not entitled to recover indemnity for partial disability from June 1, 1933, to September 12, 1933.

The provision in the policy for partial disability resulting from accident provides for indemnity if "such injuries" as are described in the policy "directly and independently of all other causes, shall from the date of the accident, or immediately following total disability, continuously disable the Insured and prevent him from performing the majority of the duties pertaining to any occupation, and shall require, and the Insured shall have, continuous, frequent, regular

and personal attendance and treatment of a licensed physician other than himself." The policy provides for "written notice" to the insurer "of injury . . . on which claim may be based" and for "filing proofs of loss" on forms which the insurer "will furnish to the claimant" or, if "forms are not so furnished within fifteen days after the receipt of such notice" for "written proof covering the occurrence, character and extent of the loss for which claim is made." The policy provides also that "Affirmative proof of loss must be furnished to the Company . . . in case of claim for loss of time from disability within ninety days after the termination of the period for which the Company is liable, and in case of claim for any other loss, within ninety days after the date of such loss," and that "No action at law or in equity shall be brought to recover on this policy prior to the expiration of sixty days after proof of loss has been filed in accordance with the requirements of this policy."

The auditor found that immediately following the plaintiff's total disability from February 1, 1933, to June 1, 1933, "from June 1, 1933 to September 12, 1933 the plaintiff was continuously disabled and prevented from performing the majority of the duties pertaining to his occupation. No proof of this fact was ever furnished to the defendant. During this period he was attended and treated by a licensed physician other than himself on July 31, 1933, August 31, 1933 and September 8, 1933, of which the defendant had notice on September 25, 1933," through a letter from the plaintiff's attending physician. This letter contained, in addition to this statement of the times he attended and treated the plaintiff, a statement that the plaintiff "was referred to the Worcester City Hospital on or about September 13th," a description of the treatment which the plaintiff received there and a statement that he was discharged about September 18 or 19. "This was the last notice of any kind received by the defendant, nor, were any blanks thereafter sent by the defendant to the plaintiff." The auditor found also that the plaintiff had given written notice to the defendant of the injuries sustained by him, filed on February 11,

1933, a "preliminary claim blank" furnished by the defendant, and filed on September 13, 1933, "a final blank which was properly filled out and signed by the plaintiff and attending physician . . . claiming total disability from February 1, 1933 to June 1, 1933," but "No partial disability was ever claimed."

The failure of the plaintiff to furnish proof of loss resulting from partial disability after June 1, 1933, is fatal to recovery of indemnity for such disability. The requirement in the policy for "proof of loss" is applicable to such loss as "loss of time from disability." Furnishing such proof was, under the language of the policy, a condition precedent to recovery. *Maskas* v. *North American Accident Ins. Co.* 279 Mass. 523, 527, 528. See also *Chauncey* v. *Royal Ins. Co. Ltd.* 275 Mass. 243, 245. On the findings of the auditor such proof was not furnished. Neither the proof furnished of loss resulting from total disability prior to June 1, 1933, nor the later letter of the plaintiff's attending physician constituted such proof or — at least in the absence, as here, of any claim for loss resulting from partial disability after June 1, 1933 — required the defendant to take any steps to obtain further proof of loss or to treat the proof of loss furnished as compliance with the provisions of the policy so far as partial disability after June 1, 1933 is concerned. And there is no finding in the auditor's report of waiver by the defendant of the requirement for proof of loss or of any excuse for noncompliance by the plaintiff with this requirement, nor are there any subsidiary findings warranting an inference of such waiver or excuse.

Whether the plaintiff is precluded from recovery of indemnity for partial disability on the ground that he has failed to prove that he had "continuous, frequent, regular and personal attendance and treatment of a licensed physician other than himself" between June 1, 1933, and September 12, 1933, as would be required to establish his right to indemnity for partial disability during that period need not be decided.

3. The plaintiff is not entitled to recover indemnity for total disability from September 12, 1933, to November 7,

1933, or for hospitalization from September 12, 1933, to September 19, 1933.

The provision in the policy for total disability resulting from accident provides for indemnity if "such injuries" as are described in the policy "directly and independently of all other causes, shall, within fourteen days after the date of the accident, wholly and continuously disable and prevent the Insured from doing any and every duty of any occupation, and shall require, and the Insured shall have, continuous, frequent, regular and personal attendance and treatment of a licensed physician other than himself."

The auditor found that "From September 12, 1933 to November 7, 1933 the plaintiff was totally disabled, and for the first eight days thereof from September 12th to September 19th was confined to the hospital. During those eight days he had continuous, frequent, regular and personal attendance and treatment of a licensed physician other than himself. Also he had such medical treatment on September 26th, October 3rd, October 10th, October 17th and November 7, 1933."

The total disability described in this finding of the auditor does not fall within the terms of the policy. Considered apart from the prior total disability it did not begin "within fourteen days after the date of the accident." And if it is considered with the prior total disability the insured was not "continuously" disabled within the meaning of the policy, because of the intervening period from June 1, 1933, to September 12, 1933, of merely partial disability. Whatever would be the effect of a merely temporary change in the condition of the insured, the specific finding of partial disability for an intervening period of over three months precludes a finding that the total disability of the insured was continuous. The lack of continuity of total disability is fatal to recovery of indemnity for total disability for the second period of such disability. See *Wrobel* v. *General Accident Fire & Life Assurance Corp. Ltd.* 288 Mass. 206, 209, 210. And since the provision in the policy for extra indemnity for hospitalization applies only "during total disability for which the monthly indemnity is payable,"

there can be no recovery of indemnity for hospitalization from September 12, 1933, to September 19, 1933.

Interest prior to the date of the writ was waived.

It follows that the exceptions must be sustained and judgment entered for the plaintiff in the sum of $286, with interest from the date of the writ.

*So ordered.*