Riley, J.
This action of contract was brought by the plaintiff to recover expenses paid under the terms of a hospitalization policy, so-called, issued by the defendant to the plaintiff.
The answer of the defendant contains a general denial and a further averment that the policy “does not cover sickness or accident when the' immediate and contributing cause is due to either injury or disease which had its inception prior to the issuance of the policy or within 15 days thereafter” and that the illness mentioned in the plaintiff’s Declaration had its inception prior to the date of the issuance of the policy or within 15 days subsequent to that date.
The portions of the policy material to the questions raised by the Report are as follows:
*275 “THE INSURING CLAUSE
“The insurance hereunder is against loss of time value and expense incurred through .accident or ilk ness and covers total disability, hospital residence, X-rays, operating room fees, laboratory fees, anaesthesia and registered nurse service, resulting from bodily injuries sustained while this policy is in force, and effected through accidental means, hereinafter referred to as ‘such injuries’ or through sickness beginning after this policy has been maintained in force for not less than fifteen (15) days from its date, and causing loss commencing while this policy is in force, hereinafter referred to as ‘such sickness’. Such loss, if due to occupational accidents or disease and covered under workmen’s compensation, is not covered hereunder.
EXCEPTIONS
“This policy does not cover sickness or accident (1) occurring outside the limits of the Continental United States of America and Canada; or (2) when the immediate and contributing cause is due to either injury or disease which had its inception prior to the issuance of the policy; or (3) from dental treatment, venereal disease, pregnancy, miscarriage or maternity; or (4) while engaged in military or naval service.”
At the trial there was evidence for the plaintiff tending to show that prior to May 13, 1940 the plaintiff had sustained no pain or discomfort of any nature in or near the region concerned but that on May 13th, during her menstrual period, she suffered a severe backache so that she visited her physician who examined her and found that she had a retroverted uterus and recommended exercises. The pain persisted after the menstrual period and on May 30th the plaintiff again visited her physician. He advised an immediate operation and in accordance with Ms *276 advice the plaintiff entered the' House of Mercy Hospital on May 31st, the operation being performed- on June 1st. At the operation' the plaintiff’s physician and surgeon found that the uterus was retroverted; that there were adhesions from a previous appendectomy; and that there was a cyst about the size of a walnut on one of the ovaries, said cyst at that time impinging on the retroverted uterus. The doctor testified that in his opinion her pain originally suffered on May 13th was due to the fact that the cyst had by that time grown to sufficient size so that with the added weight of the uterus during menstruation there was sufficient pressure of the uterus against the cyst to cause pain for the first time. At the operation the uterus was sewed back against the abdominal wall and the cyst was removed. No treatment was given the adhesions and the doctor testified that in his opinion the adhesions were in no part responsible for the pain suffered by the plaintiff. The plaintiff remained at the hospital for fifteen days and her recovery has been entirely satisfactory. There wias evidence tending to show that the cyst had been in existence for at least six months prior to the operation and that the uterus had probably been retroverted for many years.
There was evidence for the defendant tending to show that the policy was issued on March 30th, 1940; that the effective date of the health provisions of the policy was April 14, 1940; that the plaintiff admitted having difficulty in menstruating about May 13th, 1940; that her discomfort ended with the cessation of the menstrual period; that her physician- examined her shortly thereafter; that he found the uterus at that time in a marked degree of retroversion;- that he attempted to replace same by treat *277 ment in his office, bnt that the uterus was so firmly bound that he was- unable to do so; that he advised an operation and the defendant was operated on June 1st, 1940; that a part of the hospital record was prepared by plaintiff’s physician who also was the operating surgeon; and that he described therein that the chief disturbance (using the technical language of the Report) was a retroverted uterus; that a complication was an ovarian cyst. There was testimony for the defendant by a physician specializing in gynecology, that in his opinion the retroverted condition of the uterus described as haying been found at the time of the operation also existed on March 30, 1940 and on April 14th, 1940; that it had been in this condition for some time; that a retroversion of the uterus can be congenital. The said physician also testified that in his opinion the ovarian cyst was in existence on March 30th, 1940 and on April 14th, 1940. There was evidence in the form of testimony of this expert witness produced by the defendant, that after examining the hospital record and hearing the plaintiff’s testimony, it Was his opinion that, as a consequence of the ailments described, the plaintiff had the physical basis for pain prior to March 30th, 1940 and that pain caused by the retroverted uterus alone would cease after the plaintiff’s period if it were not for the presence of the cyst but pressure of the malplaced organs on the cyst would cause pain as the latter increased in size.
It was agreed at the trial that the plaintiff’s damages were in the sum of $90.00.
The trial judge found for the defendant and made a specific finding as follows:
*278 “From the evidence I.find that the illness for .which the plaintiff seeks to recover expenses as hereinbefore set forth had its inception prior to the issuance :of the policy. I rule that disease within the meaning of the terms of the policy covers any malformation, maladjustment or growth inherent in which are potentialities inimical to the health of the party affected. Not all malformations of course come within this classification. For instance, a clubfoot does not have possibilities for developments acute in character. In the case under consideration, whether it be held that the displacement of the uterus and the folding under it of the ovary instead of its floating properly show such malformation as to bring it within my ruling, it is obvious to me that the abnormal growth in the ovary was and must be considered a disease. That it had inherent in its potentialities which might affect the health of the party involved is proved by the fact that as the cyst increased in size it finally reached a point where the pressure of the displaced uterus bore down with sufficient weight upon it to give rise to congestion of an acute condition resulting in pain and requiring operative procedure.”
The plaintiff presented the following Bequests for Bulings :
“1. The clause in the policy with respect to the ‘ sickness beginning’ refers as a matter of law to the time when the physical condition needing correction first manifests itself to the assured.
“2. If the Court finds that the plaintiff suffered discomfort prior to April 14, 1940', which discomfort was not sufficient to indicate to a reasonable person in the position of the plaintiff that she should consult a physician, then the physical condition needing correction did not manifest itself within the meaning of the policy prior to said date.
“3. If an abnormal physical condition requiring surgery existed prior to April 14, 1940 but was latent *279 and caused no pain sufficient to indicate to a reasonable person that a physician should be consulted, then there was no ‘sickness’ ‘the immediate and contributing cause’ of which was ‘due to injury or disease’ having its ‘inception prior to’ the' effective date of the policy.
“4. The test as to the inception of the sickness within the meaning of the clauses in the policy is the condition the general nature of which was known to or should have been known to a reasonable person in the position of the plaintiff as of April 14, 1940. It is not the condition which would have been disclosed to a physician through a physical examination at that time.
“5. In this case there was no evidence of discomfort on or before April 14, 1940 sufficient to indicate to a reasonable person in the position of the plaintiff that she should consult a physician.”
The defendant also filed Bequests for Bulings as follows:
“1. Under the terms of the policy of insurance, the plaintiff cannot recover if the sickness referred to in the plaintiff’s declaration, although occurring for the first time subsequent to the issuance of the policy and/or the effective date of the health provisions of the policy, nevertheless was due to an injury or disease which existed prior to the date of the issuance of the policy and/or prior to the effective date of the health provisions of the policy.
“2. The word ‘disease’ as used in the paragraph of the policy headed ‘Exceptions’ means a deviation from the healthy or normal condition of any of the functions or tissues of the body; an alteration in the state of the body or of some of its organs, interrupting or disturbing the performance of the vital functions and causing a threatening pain and weakness.
*280 “3. (a)-' If a retroversion of the uterus caused the plaintiff pain and discomfort prior to the effective date of the health provisions of the: policy, the plaintiff under the terms;of the policy, is not entitled to. recover.
(b) And if the plaintiff suffered such pain and discomfort, it is immaterial whether she knew the exact cause of the pain and discomfort.
“4. Under the terms of the policy, if the deviation from the healthy or normal condition of a function of the body, had its inception or began prior to the effective date of the policy (April 14, 1940), although such deviation did not produce pain or exhibit itself in any other way until after the effective date of the policy, the plaintiff cannot recover.
“5. The plaintiff has the burden of showing that her claim comes within the terms of the policy.”
The plaintiff’s Bequests for Rulings were all denied with the statement that the second was found immaterial in view] of the fact that there was no evidence of discomfort prior to April 14, 1940.
The defendant’s Requests were dealt with by the trial judge as follows:
“The first is given, the second is given so far as the word ‘disease’ is interpreted in this decision. The third is denied as immaterial in view of the fact that the finding is based upon the abnormal growth in the ovary. There was no evidence to indicate that the retroversion of the uterus taken in and by itself would have caused pain or made operative surgery necessary. The fourth is given; the fifth is given in part; the two specific portions of the contract in the policy are separable, in the one instance the burden is upon the plaintiff and the other upon the defendant. ’ ’
In finding for the defendant, the judge found as a fact that the illness for which the plaintiff sought to recover *281 had its inception prior to the issuance of the policy. We cannot disturb this finding unless there was some error of the judge in the manner in which he dealt with the Requests for Rulings of the parties, as the correctness of these Rulings is the only question presented by the Report. Himmelfarb vs. Novadel Agene Corp., 305 Mass. 446, 447, 449. No ruling was requested that the evidence did not warrant a finding for the defendant.
Of the plaintiff’s Requests, the second and fifth called for findings of fact which the trial judge was not obliged to make. Gibbons vs. Denoncourt, 297 Mass. 448, 456, 457. However, he impliedly found the facts to be as the plaintiff contended in both Requests, although he referred only to the second in his decision.
The plaintiff’s first, third and fourth Requests, which were refused, called for an interpretation of the policy. If the “insuring clause” hereinbefore set out, were eon sidered alone, the first Request might well have been given. Bovedau vs. Boston Casualty Co., 273 Mass. 156. However, both the “insuring clause” and the “exceptions” must be considered together in determining whether the plaintiff has brought herself within the terms of the policy. As was said in Wrobel vs. General Accident and Assurance Corp., 288 Mass. 206 at 209, 210, “The clauses quoted from the policy are parts of a single contract. They are to be construed as constituting a contract between" the parties intended to be a complete and harmonious instrument designed to accomplish a reasonable end. Every word and phrase must be presumed to have been employed with a purpose and must be given meaning and effect whenever practicable.” Consequently, the plaintiff was entitled to recover in this case if her expenses were incur *282 red through “sickness beginning after this policy had been maintained in force for not" less than 15 days from its daté” "except “when the immediate and contributing cause" of such sickness was due to disease which had its inception prior to the issuance of the policy.” Therefore, the judge was not required to .give the plaintiff’s first Request as it confined too narrowly, and not in accordance with the policy, the words sought to be construed. See Wrobel vs. General Accident and Assurance Co., 288 Mass. 206 at 211, 212.
The plaintiff's third and fourth Requests sought to have the knowledge of a reasonable person in the position of the plaintiff as to her condition, the test of the construction of the terms of the policy rather than what actually might have been found to have been the facts. To have given them would have required the judge to disregard the excepting clause in the policy, hereinbefore set out." The defendant, of course, was entitled to show that the plaintiff’s sickness came within the terms of the exceptions. Palumbo vs. Metropolitan Life Ins. Co., 293 Mass. 35. The contentions of the plaintiff that the sickness, the immediate and contributing cause of which was due to disease which had its inception prior to the issuance of the policy, must have been something that had manifested itself to the assured, seem to be disposed of by the language of the court in Palumbo vs. Metropolitan Life Ins. Co., 296 Mass. 358, 360, where it is said that a disease may exist without pain or weakness. The policy in that case provided indemnity for disability as a result of disease occurring and originating after the issuance of the policy. It was held that the court should have instructed the jury that if the insured had the disabling disease prior to the issuance of the policy but was symptom-free she could *283 not recover. We think that this case is sufficient authority for the denial of the plaintiff’s third and fourth Requests although there are conflicting decisions in other jurisdictions.
The defendant’s first Request was properly given as it is in substance framed in the terms of the clauses quoted from the policy. Wrobel vs. General Accident Corp., 288 Mass. 206, 212.
The defendant’s second Request, which is complained of by the plaintiff, seems to follow closely the language of the court in Palumbo vs. Metropolitan Life Ins. Co., 296 Mass. 358, 360.
Its third Request was denied.
Its fourth Request was properly given, according to our construction of the policy. It resembles the defendant’s fourth Request in Palumbo vs. Metropolitan Life Ins. Co., 296 Mass. 358, 361, which the court said should have been given. That Request was “That if the insured prior to the issuance of the policies had definite proliferative changes in the joints of his body known as hypertrophie arthritis, which did not give him bodily discomfort or disability until after the issuance of the policy, the plaintiff cannot recover if the insured’s disability today is a result of that disease known as hypertrophie arthritis."
In passing upon the defendant’s fifth Request, the judge properly ruled that the burden was on the plaintiff to prove that she came within the insuring clause of the policy and upon the defendant to show that she was subject to the exceptions. Lunt vs. Aetna Life Ins. Co. of Hartford, 253 Mass. 610 at 614. Thomas and Kelley Co. vs. United etc. Ins. Co., 263 Mass. 181 at 186.
We find no prejudicial error in the rulings complained of and the Report will be ordered dismissed.