48 F.3d 1211
NOTICE: First Circuit Local Rule 36.2(b)6 states unpublished opinions may be cited only in related cases.
 Berta Maidanik SIGUEL and Edward N. Siguel, Plaintiffs, Appellants,
v.
ALLSTATE LIFE INSURANCE COMPANY, Defendant, Appellee.
 No. 94-1392.
 United States Court of Appeals,
First Circuit.
 Mar. 10, 1995.
 
 Appeal from the United States District Court for the District of Massachusetts [Hon. Robert E. Keeton, U.S. District Judge ]
 Edward N. Siguel on brief pro se.
 Craig Browne, Daniel H. Conroy and Goldstein & Manello, P.C. on brief for appellee.
 D.Mass.
 AFFIRMED.
 Before TORRUELLA, Chief Judge, SELYA and BOUDIN, Circuit Judges.
 PER CURIAM.
 
 
 1
 This appeal concerns an attempt by appellant Edward Siguel to collect benefits under an accidental death and dismemberment insurance policy issued by appellee Allstate Life Insurance Co. to Siguel's father. The district court entered judgment for Allstate under Fed. R. Civ. P. 52(c) after Siguel presented his evidence at a non-jury trial.[1]
 
 I.
 
 2
 In 1986 Siguel obtained the insurance policy from Allstate; he listed his father, Isidoro Siguel, as the insured and his mother, Berta Siguel, as the beneficiary. According to Siguel the insured, while in Argentina, sustained an injury to his left forearm from a blow he received while getting off a public bus. This accident occurred sometime in January 1988. On February 10, 1988, the insured went to a hospital out- patient clinic where a physician, Dr. Pattin, drained an abscess on the insured's left forearm. Later that same day, the insured died.
 
 
 3
 Siguel filed a claim in June 1988 on behalf of his mother for benefits under the policy. As proof of loss, Siguel submitted a death certificate which listed the cause of death as cardiorespiratory arrest; he also submitted two reports prepared by Dr. Pattin which stated that the insured's death was accidental. Allstate denied the claim on December 27, 1989. It had conducted an investigation and concluded that the cause of death was not the result of an accident as defined in the insurance policy. On March 28, 1991, Siguel filed an action in federal district court on behalf of his mother as the beneficiary.[2]
 
 
 4
 The parties engaged in discovery and the case was tried in January 1994. The district court first heard Siguel's evidence and argument that his father's death was accidental. It then made Rule 52(c) findings concerning the cause of death. The court initially determined that an accident had occurred on the bus. However, the court found that Siguel had not demonstrated by a preponderance of the evidence that the accident had resulted in the insured's death. Specifically, the court concluded there were no causal connections, first, between the accident on the bus and the abscess and, second, between the abscess and the death. The court further stated that the existence of the link was not a matter that could be proved without the aid of expert testimony.
 
 
 5
 The court then rejected Siguel's theory that the medical treatment of the abscess itself was faulty, thereby constituting an accident which caused the death. The court stated that there was insufficient evidence from which it could find that the draining of the abscess was an accident. Again, the court opined that it required expert testimony to establish that there was something wrong with the treatment and that this error was responsible for the insured's death. The court also rejected Siguel's argument that because his father did not expect to die, his death was accidental; the court described this legal theory as incorrect and without any support in the caselaw.
 
 II.
 
 6
 On appeal, Siguel claims that the district court erred by (A) ruling on the merits in favor of Allstate; (B) denying Siguel's motion for a new trial; (C) permitting Allstate to file late responses to Siguel's request for admissions; (D) disqualifying Siguel from representing his mother; (E) denying Siguel (who the court allowed to appear pro se after his mother assigned her claims to him) the right to have a lawyer assist him at trial; and (F) refusing to assess costs or sanctions against Allstate.
 
 
 7
 A. The Merits.
 
 
 8
 As with any case involving questions of insurance coverage, we start with the language of the policy. It provides benefits if the person insured is injured in an accident. Injury or injured is defined as meaning
 
 
 9
 bodily injury caused by an accident occurring while the insurance is in force and which injury results within 365 days after the date of the accident, directly and independently of all other causes, in death or any other "Loss" covered by the Policy. (emphasis § added).
 
 
 10
 If an individual is injured while a passenger on a public conveyance the benefit is $200,000. In other cases the benefit is $60,000.
 
 
 11
 Siguel first argues that the district court should have used the "accidental results" approach to interpreting this kind of insurance contract and that it instead erroneously used an "accidental means" test.[3] Under the latter test, "the means which produced death or injury must have been unintentional." Wickman v. Northwestern Nat'l Ins. Co., 908 F.2d 1077, 1085 (1st Cir.) (emphasis added), cert. denied, 498 U.S. 1013 (1990). A results approach focusses on the unexpected nature of the injury or death itself; thus, "where the death is not designed and not anticipated by the deceased, though it is in consequence of some act voluntarily done by him, it is accidental death." 10 Couch on Insurance 2d Sec. 41:29, at 44 (rev. ed. 1982).
 
 
 12
 Under both approaches, however, an accident must be the proximate cause of the harm or loss.
 
 
 13
 Irrespective of whether or not it is required that the means, as well as the result, be accidental in origin, it has been held that in determining whether or not a recovery will be allowed ... a court may require that the accident be a proximate cause of the injury or death, regardless of the fact that the policy may not set up this requirement.
 
 
 14
 1A Appleman, Insurance Law and Practice Sec. 362, at 482 (rev. ed. 1981) (footnotes omitted); Couch on Insurance Sec. 41:12, at 16 ("In order to bring the harm sustained within the coverage of an accident policy, it is necessary that the accident be the proximate cause of the harm sustained.") (footnote omitted).
 
 
 15
 We first note that the insurance policy in this case in fact requires that death be "caused by an accident." Second, the courts of both Illinois and Massachusetts have held that to obtain benefits under this kind of insurance, an accident must be the proximate cause of death or injury. See Carlson v. New York Life Ins. Co., 76 Ill. App. 2d 187, 196, 222 N.E.2d 363, 368 (1966) (where there is both a preexisting illness and an accidental injury, "the pivotal issue is whether the accidental injury was the proximate cause of the resulting loss"); Coleman v. American Casualty Co., 354 Mass. 762, 762, 237 N.E.2d 22, 22 (1968) (where the insurance policy provides recovery for "loss resulting directly and independently of all other causes from accidental bodily injury," there must be evidence that but for the insured's accidental fall, the loss would not have occurred). Thus, the district court did not err in determining that Siguel must show that his father's death was precipitated by an accident.
 
 
 16
 This also takes care of Siguel's argument that for death to be accidental all that is required is that it be unexpected from the insured's point of view. While the results approach speaks of an unexpected and unforeseen result, there is no indication in the case law or commentaries that the unexpected nature of the loss is sufficient, without more, to trigger coverage. Indeed, Siguel does not cite any cases so holding. Wickman, on which Siguel primarily relies, is distinguishable. There the deceased was observed standing outside of a guardrail on an overpass section of an interstate highway. Immediately before the deceased fell to his death, he was holding on to the guardrail with only one hand.
 
 
 17
 To determine whether this death was accidental, we held that a factfinder must begin with the "reasonable expectations" of the insured. 908 F.2d at 1088. If there is insufficient evidence of the insured's point of view, the finder of fact then should then ask whether a reasonable person in the insured's position "would have viewed the injury as highly likely to occur as a result of the insured's intentional conduct." Id. Based on these principles, we upheld the magistrate's finding that the deceased knew or should have known that death was a likely consequence of his intentional act in standing on the outside of the guardrail and holding on with one hand. Id. at 1088-89.
 
 
 18
 It is obvious that the issue in Wickman was how to determine when the result of an intentional act is inadvertent. Focussing on the insured's expectations regarding the outcome of his or her behavior makes sense in this context. Here, though, there is no allegation that the insured's conduct contributed in any way to his death. Thus, his expectations regarding when he would die are immaterial.
 
 
 19
 Siguel similarly argues that his father did not expect to die after having the abscess on his left arm drained. Thus, he asserts, when death unexpectedly occurs during a medical procedure, it should be viewed as accidental. However, where medical treatment is not sought for an accident, the "mere fact that the insured dies ... as a result of such treatment does not constitute an accident...." Couch on Insurance Sec. 41:113, at 187. There is no evidence that, first, the accident on the bus resulted in the abscess (the reason treatment was sought) or, second, that there was anything wrong with the way in which the draining procedure was performed.
 
 
 20
 Siguel next asserts that because his father did not expect to suffer cardiorespiratory failure, the illness itself was accidental. Siguel then posits that if the cardiorespiratory failure was an accident, his father's death was accidental. Siguel first set forth this theory in his motion for reconsideration filed after trial ended. In any event, Siguel again ignores the requirement of causation.
 
 
 21
 For example, in Scholle v. Continental Nat'l American Group, 44 Ill. App. 3d 716, 358 N.E.2d 893 (1976), the insured fell and subsequently died of a ruptured aneurysm. The court held that to recover, plaintiff was required to produce direct or circumstantial evidence to show that there was a "causal relationship" between the fall and the burst aneurysm. 44 Ill. App. 3d at 721, 358 N.E.2d at 897. Thus, "[w]here there is no occurrence which may be deemed an accident, it necessarily follows that the harm sustained as the consequence of a disease is not within the coverage of an accident policy." 10 Couch on Insurance Sec. 41:70, at 105 (footnotes omitted).
 
 
 22
 Siguel finally avers that the district court erred by requiring expert medical testimony to link the accident on the bus, or the draining of the abscess, to his father's death. He argues that because the insurance contract did not require expert testimony, the court could not demand it. Siguel fails to cite any law in support of this proposition. Further, cases from both Illinois and Massachusetts reveal that experts routinely testify concerning this issue. See Wahls v. Aetna Life Ins. Co., 122 Ill. App. 3d 309, 461 N.E.2d 466 (1983); Carlson v. New York Life Ins. Co., supra, 76 Ill. App. 2d 187, 222 N.E.2d 363; Barnett v. John Hancock Mut. Life Ins. Co., 304 Mass. 564, 24 N.E.2d 662 (1939); Wrobel .v General Accident, Fire & Life Assurance Corp., 288 Mass. 206, 192 N.E. 498 (1934).
 
 
 23
 B. New Trial Motion.
 
 
 24
 Siguel requested a new trial based on his assertion that the district court had misunderstood the law concerning accidental death insurance contracts and because Allstate had refused to turn over to Siguel the transcript of the deposition of Dr. Pinto, the physician who had investigated the claim for Allstate in Argentina. We review the denial of a motion for a new trial for abuse of discretion. deMars v. Equitable Life Assurance Soc'y of the United States, 610 F.2d 55, 64 (1st Cir. 1979).
 
 
 25
 Based on our discussion of the merits of Siguel's claim, we find that the court was fully justified in rejecting the motion for a new trial. As for the transcript of Dr. Pinto's deposition, we make only two observations. First, Siguel does not specify what information provided by Dr. Pinto would have helped him in establishing that the insured's death was accidental. Second, Siguel was present at the deposition and obtained a transcript of Dr. Pinto's testimony prior to the end of trial. Thus, there is no excuse for Siguel's failure so to specify.
 
 
 26
 C. Request for Admissions.
 
 
 27
 On March 28, 1991, Siguel filed the complaint in this case. At the same time, he served a request for admissions, interrogatories, and a request for documents. Allstate and Siguel agreed to extend the time for the filing of the answers to the interrogatories and the responses to the document request. Allstate states that it believed that the parties also had agreed to extend the time for it to answer the request for admissions. Siguel claims that the agreement never applied to the request for admissions. Therefore, on June 24, 1991, Allstate filed a motion to withdraw the matters deemed admitted by its failure to file timely responses and a motion to extend the time for responding to the admissions request. Siguel opposed the motions and, on July 3, 1991, filed a motion for summary judgment based on the factual issues "admitted" by Allstate. On September 18, a magistrate judge granted Allstate's motions.
 
 
 28
 Fed. R. Civ. P. 36(a) provides that a matter is deemed admitted unless a response is filed "within 30 days after service of the request, or within such shorter or longer time as the court may allow...." The district court may not only extend the time for filing answers to requests for admissions, but also may permit withdrawal of an admission "when the presentation of the merits of the action will be subserved thereby and the party who obtained the admission fails to satisfy the court that withdrawal ... will prejudice that party in maintaining the action or defense on the merits." Fed. R. Civ. P. 36(b). Contrary to Siguel's assertion, the focus under Rule 36(b) is not on the moving party's explanations for its non-compliance with the Rule. See F.D.I.C. v. Prusia, 18 F.3d 637, 640 (8th Cir. 1994). Thus, Allstate is not required to show excusable neglect. Id. (citation omitted). We review a decision to allow withdrawal of admissions for abuse of discretion. Farr Man & Co. v. M/V Rozita, 903 F.2d 871, 876 (1st Cir. 1990).
 
 
 29
 The magistrate judge found that the matters deemed admitted were determinative of all the material facts in issue. As a result, "[t]he first half of the test is clearly satisfied since the effect of upholding the admissions would be to practically eliminate any presentation of the merits." Westmoreland v. Triumph Motorcycle Corp., 71 F.R.D. 192, 193 (D. Conn. 1976). We thus turn to whether Siguel satisfied his burden of demonstrating prejudice to his ability to maintain the action.
 
 
 30
 Siguel claims that Allstate's "delaying tactics" held up the proceedings and prevented him from conducting discovery for almost one year. Specifically, Siguel asserts that during this time he refrained from searching for witnesses who might have had knowledge concerning the circumstances of the insured's death. Siguel also complains that he was unable to conduct discovery prior to the district court's decision allowing withdrawal of the admissions because he did not know what facts were in dispute. These claims are unavailing. Siguel knew from the time Allstate denied coverage in 1989 that it was alleging that his father's death was not an accident and that this would be the major issue in the case.
 
 
 31
 Further, prejudice under Rule 36(b) "relates to the difficulty a party may face in proving its case, e.g., caused by the unavailability of key witnesses, because of the sudden need to obtain evidence with respect to the questions previously answered by the admissions." Brook Village N. Associates v. General Elec. Co., 686 F.2d 66, 70 (1st Cir. 1982). There was no "sudden need" for Siguel to obtain evidence here. He was on notice as of June 24, 1991 that Allstate was attempting to withdraw its admissions. This was soon after the case was initiated and quite a while before a trial likely would occur. Finally, that Siguel filed a motion for summary judgment shortly after Allstate requested withdrawal of the admissions does not constitute prejudice. See F.D.I.C. v. Prusia, 18 F.3d at 640. Given our finding, we do not think that the district court erred in refusing to award costs to Siguel.
 
 
 32
 D. Disqualification.
 
 
 33
 In February 1992, Allstate moved to have Siguel disqualified from representing his mother on the ground that he would be a witness in the case. On March 23, 1992, a magistrate judge denied the motion without prejudice to its renewal. She acknowledged the financial hardship attendant upon securing new counsel and recognized that the proceedings still were in the discovery stage. However, she ordered Siguel's mother to obtain co-counsel by May 18, 1992.
 
 
 34
 Siguel then moved for an extension of time and Allstate sought reconsideration of the denial of the disqualification motion. The magistrate judge gave Siguel until September 30 to secure co-counsel. Instead of complying with the magistrate judge's directive, Siguel filed a motion to permit him to substitute himself as the plaintiff in the case. In January 1993, and without ruling on this motion, the magistrate judge recommended disqualification. She found that Siguel's role as a witness would conflict with his duty to his mother effectively to represent her. The district court agreed and adopted her recommendation.
 
 
 35
 We review a decision disqualifying an attorney from representing his or her client for abuse of discretion.[4] Fiandaca v. Cunningham, 827 F.2d 825, 828 (1st Cir. 1987). Disciplinary Rule 5-102(A), 359 Mass. 796 (1972), provides that an attorney who learns that he "ought to be called as a witness on behalf of his client ... shall withdraw from the conduct of the trial...." One of the reasons for this rule is that if a lawyer appears both as an advocate and witness, "he becomes more easily impeachable for interest and thus may be a less effective witness." Borman v. Borman, 378 Mass. 775, 786, 393 N.E.2d 847, 855 (1979) (internal quotation marks and citation omitted).
 
 
 36
 The magistrate judge found that Siguel, as a physician, had been involved in his father's health care from 1982 through 1987. He had discussed with Dr. Pattin the events that led to the draining of the abscess and typed a report from Dr. Pattin's handwritten notes. This report concluded that the accident on the bus had caused the insured's death. Dr. Pattin signed the report before he (Dr. Pattin) died. Further, Siguel was an active (if not the sole) participant in the attempt to gain benefits under the insurance policy.
 
 
 37
 Disqualification is appropriate where an attorney is intimately involved in the events that form the subject matter of the action. American Hosp. Supply Corp. v. Roy Lapidus, Inc., 493 F. Supp. 1076, 1078 (D. Mass. 1980); Serody v. Serody, 19 Mass. App. Ct. 411, 415, 474 N.E.2d 1171, 1174 (1985). It is apparent from the foregoing that Siguel's familiarity with most of the facts underlying this action makes it almost certain that he will be called as a witness. Also of relevance is that the information about which Siguel probably would testify is not readily obtainable from other sources. See Serody, 19 Mass. App. Ct. at 414, 474 N.E.2d at 1174.
 
 
 38
 In his role as a witness, Siguel's credibility will be an issue. For example, the parties contest the admissability of Dr. Pattin's report; Siguel's part in creating that report will not aid his mother's case. As the Supreme Judicial Court pointed out, the need for disqualification is the greatest where the outcome of the case likely will turn on the lawyer's credibility as a witness. Borman, 378 Mass. at 786-87, 393 N.E.2d at 855.
 
 
 39
 Siguel argues that DR 5-102(A) only applies to trial and not to discovery proceedings. He cites no cases for this proposition. It seems to us that if new counsel is to take over at trial, the sooner he or she is involved in the case the better for the client. To wait until the eve of trial would hamper the presentation of the case-not a result, we think, contemplated by the disciplinary rules. Siguel also posits that since there was a non-jury trial in this case, there was no chance of the judge being confused over his appearance as both witness and lawyer. This argument misses the mark. The concern is over the credibility of a lawyer who also appears as a witness and a judge assesses credibility just as the jury does.
 
 
 40
 Finally, Siguel maintains that requiring his withdrawal worked a "substantial hardship" on his mother. See DR 5-101(B)(4), 359 Mass. 796 (1972). Specifically, he alleges that she did not have the financial wherewithal to hire another attorney. We do not agree. As the magistrate judge pointed out, the case is not especially complex and another attorney could master the facts and the issues in a comparatively short period of time. In any event, this problem was solved when the district court permitted Siguel to accept the assignment of the claim from his mother and granted Siguel's motion to appear pro se.
 
 
 41
 E. Assistance of Counsel.
 
 
 42
 Once the court granted Siguel leave to appear pro se, Siguel requested that he be allowed to hire counsel to assist him in trying the case. He argued that just as Allstate had hired local counsel, he too should be allowed the same opportunity. The court denied the motion, stating that it did not "permit a combination of a lawyer and a pro se." Siguel argues that by so holding, the court improperly created a new local rule. Siguel's claim lacks merit.
 
 
 43
 28 U.S.C. Sec. 1654 provides that "[i]n all courts of the United States the parties may plead and conduct their own cases personally or by counsel...." Siguel admits that he could not find any cases in support of his interpretation of Sec. 1654. The reason, we think, is plain. "Section 1654 does not itself confer any right to 'hybrid representation.' " O'Reilly v. New York Times Co., 692 F.2d 863, 868 (2d Cir. 1982) (to claim the right to self-representation, a party must "clearly and unequivocally discharge any lawyer"). Thus, the district court's denial of Siguel's request to employ a lawyer to aid him was not in error.
 
 
 44
 F. Costs and Sanctions.
 
 
 45
 Siguel appeals from the denial by the district court of a motion for sanctions (docket # 188) filed shortly before trial commenced. Siguel sought sanctions for Allstate's alleged (1) failure to comply with deadlines for filing pleadings and responding to discovery requests, (2) failure to prepare a joint stipulation concerning procedures for the taking of depositions in Argentina, (3) failure to file a joint statement of undisputed facts, (4) failure to prepare a list of documents it considered privileged, and (5) failure to serve subpoenas in compliance with Fed. R. Civ. P. 45. Siguel also claims that the district court erred in granting an extension of time to Allstate to file its answer to an amended complaint; Siguel asserts that the court granted this motion on the mistaken assumption that Siguel had not filed an opposition to an extension of time.
 
 
 46
 We have reviewed the record and the parties' briefs and cannot find that the district court abused the broad discretion it has in these areas. See In re Recticel Foam Corp., 859 F.2d 1000, 1006 (1st Cir. 1988) ("[t]rial courts enjoy a broad measure of discretion in managing pretrial affairs, including the conduct of discovery"). Consequently, "[w]e will intervene in such matters only upon a clear showing of manifest injustice, that is, where the lower court's discovery order was plainly wrong and resulted in substantial prejudice to the aggrieved party." Mack v. Great Atl. & Pac. Tea Co., 871 F.2d 179, 186 (1st Cir. 1989). Essentially, we agree with the district court's conclusion that Siguel failed to show how he was prejudiced by either the way in which the court managed the pretrial proceedings in this case or by Allstate's alleged failure to comply with the Federal Rules or court orders concerning discovery.
 
 
 47
 The judgment of the district court is affirmed.
 
 
 
 [1]
 Rule 52(c) provides that "[i]f during a trial without a jury a party has been fully heard on an issue and the court finds against the party on that issue, the court may enter judgment as a matter of law against that party...."
 
 
 [2]
 At this time, Berta Siguel was represented by her son and another attorney. For ease of reference, Siguel will be treated as the plaintiff except where his status as both an attorney and party is the issue
 
 
 [3]
 The district court, with the consent of the parties, applied Illinois and Massachusetts law to this insurance contract, finding that there was no difference between the law of the two jurisdictions
 
 
 [4]
 Allstate argues that Siguel has no standing to raise this claim as his mother no longer is a party. Because we find that his claim fails on the merits, we do not address the standing question