THOMSON & KELLY CO. *vs.* UNITED STATES MERCHANTS AND SHIPPERS INSURANCE COMPANY.

THOMSON & KELLY CO. & another *vs.* UNITED STATES FIRE INSURANCE COMPANY OF NEW YORK.

SAME *vs.* BRITISH AMERICA ASSURANCE COMPANY.

Suffolk.   January 11, 1928.— March 24, 1928.

Present: RUGG, C.J., BRALEY, CROSBY, PIERCE, & CARROLL, JJ.

*Insurance,* Fire: equitable interest, altered circumstances, negligence of insured. *Pleading, Civil,* Answer. *Evidence,* Presumptions and burden of proof. *Practice, Civil,* Special finding by jury, Ordering verdict. *Negligence,* Of insured.

The owner of the equitable interest in certain merchandise and a bank which was the holder of "trust receipts" therefor brought an action of contract upon a policy of fire insurance issued for the benefit of the owner, and of the bank as its interest might appear. The answer, while containing a general denial and an allegation of payment, contained no allegation or specific denial as to the bank's interest. It appeared that the bank had an insurable interest in the property of $750,000, and that the owner also owed it $125,000 as an unsecured indebtedness; that the bank had received from insurers, both in policies in which it was named and in policies where it was not named, enough money so that, applying it first to the unsecured indebtedness, there still remained due on the secured indebtedness over $33,000. A jury, in answering a special question, found that the bank had been paid all that was due it on the "trust receipts." *Held,* that

(1) Even if the defendant was concerned with the division between the plaintiffs of amounts received from insurance, so that a contention of the defendant, that a verdict should be ordered for the defendant as to the bank if the bank had been paid what was due it on the "trust receipts," was open on the pleadings or could be open in the action, the burden of establishing such defence was on the defendant;

(2) The jury's answer to the question was not warranted by the evidence, and properly might be ignored by the trial judge.

The words, "situation or circumstances affecting the risk," in a provision in a policy of fire insurance, "This policy shall be void . . . if, without such assent, the situation or circumstances affecting the risk shall, by or with the knowledge, advice, agency or consent of the insured, be so altered as to cause an increase of such risk," imply something of duration; a casual change of a temporary character would not render the policy void under such a provision.

Mere negligence of the insured under a policy containing the provision above quoted would not render the policy void.

In an action upon a policy containing the provision above quoted, it appeared that the goods insured were stored in a building and were of a character that required protection from moths; that the insured unsuccessfully had used naphthalene flakes and idico to kill moths; that later on two occasions he had used sulphur candles set in water; and that the fire occurred on the second occasion of the use of the candles. There was evidence that it was caused by the flame of the sulphur candles igniting the vapor of the naphthalene and idico. The defendant's answer set up violation of the provision above quoted. *Held,* that

　　(1) The burden was on the defendant to prove violation of the provision quoted;

　　(2) The evidence did not warrant a finding of such violation.

　　(3) A verdict properly was ordered for the plaintiff.

THREE ACTIONS OF CONTRACT upon policies of fire insurance, described in the opinion. Writs dated June 4, 1924.

The answer of the defendants, as amended, contained, besides a general denial, allegations of payment; "that the plaintiff did not comply with the terms of its policy in that without the knowledge, advice, agency or consent of the defendant, but with such knowledge on its part, the plaintiff so changed the situation or circumstances affecting the risk as to cause an increase in said risk, thereby making the policy void"; and "that the plaintiff was guilty of such reckless and inexcusable negligence as to violate the terms of its policy, and therefore, the defendant is not liable."

The actions were tried together before *Williams,* J. Material evidence, special questions to the jury and the answers thereto are stated in the opinion. Among other rulings requested by the defendant and refused by the judge, were rulings in effect that, if The First National Bank of Boston had been paid for all loans covering the property lost in the fires, or for all loans secured by the "trust receipts," there should be verdicts for the defendants as to it. By order of the judge, verdicts were entered for the plain-

tiffs, respectively, in the sums of $5,985, $11,970, and $17,955. The defendants alleged exceptions.

   *W. H. Hitchcock,* (*H. C. Atwill* with him,) for the plaintiffs.

   *B. A. Brickley,* for the defendants.

   CARROLL, J.   These three actions to recover on three policies of fire insurance for damage done by fire on or about July 18, 1923, were tried together in the Superior Court. The policies were in the Massachusetts form. The policy of the United States Merchants & Shippers Insurance Company insured Thomson & Kelly Co. in the sum of $5,000. The policy of the United States Fire Insurance Company insured Thomson & Kelly Co. and the International Trust Company as their interests might appear in the sum of $10,000. The policy of the British American Assurance Company insured the Thomson & Kelly Co. and the International Trust Company as their interests might appear in the sum of $15,000. After the issuance of the policies the International Trust Company, named in two of the policies, consolidated with The First National Bank of Boston. Each of the policies contained the clause "This policy shall be void . . . if, without such assent, the situation or circumstances affecting the risk shall, by or with the knowledge, advice, agency or consent of the insured, be so altered as to cause an increase of such risk."

   The total amount of insurance on the property in question was $1,137,500. The referees decided that the amount of the loss was $1,195,069.55 and the actual value of the merchandise before the fire was $1,320,089.55. The total amount of insurance in which the bank was interested was $650,000. There was additional insurance in which the Thomson & Kelly Co. alone were interested. After the fire the bank received from various insurance companies the sum of $556,250, and in addition the sum of $222,500 was received from insurance payable to Thomson & Kelly Co. to be applied on the indebtedness of Thomson & Kelly Co. to the bank. It is not disputed that the preliminary conditions required by the policies were complied with.

   Several questions were submitted to the jury, one being, "Prior to the date of the writ, has the plaintiff, the First

National Bank . . . from moneys or drafts received from other insurance companies not parties to these suits, or from Thomson Kelly Company, been paid in full the amount of all indebtedness due from Thomson Kelly Company at the time of the fire, which indebtedness was then secured by trust receipts?" The jury answered ".Yes." After the jury had answered this question and other questions submitted to them, the trial judge directed a verdict for the plaintiffs and reported the cases.

The answer of the jury to the question referred to had no bearing on the first of these three cases, which was on a policy payable to the Thomson & Kelly Co. alone; the bank was not interested. The finding of the jury was disregarded properly in directing a verdict for the plaintiff in that case.

There was no error of law in disregarding the answer of the jury to the question in connection with the other two cases, where the bank was a party. This defence relied on by the defendants is an affirmative one, which must be pleaded by the defendants; it is based on events arising after the loss — after the cause of action arose, and assuming, but not deciding, that it was open to the defendants under their answers, (see *Forbes* v. *American Mutual Life Ins. Co.* 15 Gray, 249; *Shea* v. *Massachusetts Benefit Association,* 160 Mass. 289, 291) the burden was upon the defendants to establish this defence, even if the defendants were concerned with the division between the plaintiffs of the amounts received, which question we do not think it necessary to consider.

In our opinion, the finding of the jury in answer to this question was not warranted by the evidence, and the judge was justified in ruling as he did. Apparently it was not disputed that The First National Bank had an insurable interest of about $750,000. When the money was lent to the Thomson & Kelly Co. by the bank, trust receipts were given by which the company undertook to hold the merchandise until the sum advanced was paid. There was some evidence that over $800,000 had been received by the bank from insurance companies, many of which companies had insured Thomson & Kelly Co. alone. And it further

appeared that there was an unsecured indebtedness of the Thomson & Kelly Co. to the bank of $125,000. We do not understand that this is controverted.

As the drafts from the insurance companies came to the bank, they were in part applied to this unsecured indebtedness, so as to leave a balance due the bank of $33,083 on the secured account. It was incumbent on the defendants to show not only the receipt of the moneys but their application to the respective debts in such a manner that the $750,000 account was fully paid. This the defendants did not do. Reliance is placed by the defendants on the testimony of a witness for the plaintiffs. This question was put to him: "Now, when these drafts were received from the insurance companies, they were applied, as I understand it, towards reducing the indebtedness of the $750,000?" He answered "True." He did not testify that the secured indebtedness was fully paid, nor is his testimony to be interpreted as meaning that none of the drafts were applied to the unsecured indebtedness. The witness had previously testified that Thomson & Kelly Co. owed the bank about $750,000 on letters of credit, and on open account and other notes $125,000, making a total of $875,000. He further testified to the various transactions and stated that the records of the bank showed that Thomson & Kelly Co. still owed the bank on acceptances $33,083. The burden of sustaining the defence relied on was on the defendants. It could not be fairly inferred that the insurance received by the bank was so applied, as completely to extinguish the secured indebtedness. We do not understand it to be questioned that the records of this bank show this secured indebtedness of $33,083, and we are unable to find anything in the record to the contrary. The jury's answer to the question therefore was not warranted by the evidence, and the judge could ignore it.

Another defence is that, under the terms of the policies, they were to be void, if, without the assent of the insurer, the situation or circumstances affecting the risk were so altered by the insured as "to cause an increase of such risk." The defendants contend that the situation or circumstances were changed so as to increase the risk, and that this ques-

tion was one of fact for the jury; that the jury, by answering "Yes" to the question "Without the assent of the insurer, the defendant insurance company, was the situation or circumstances affecting the risk, by or with the knowledge, advice, agency or consent of the insured, or either of them, so altered as to cause an increase of such risks," has settled the issue that the policies are void, and for this reason the plaintiffs cannot recover.

This condition in the policies does not appear as a part of the general clause setting forth the companies' liability. It was therefore required of the defendants to allege and prove its violation. It was an affirmative defence, the burden being upon the defendants. *Jones Manuf. Co.* v. *Manufacturers' Mutual Fire Ins. Co.* 8 Cush. 82. *Lunt* v. *Aetna Life Ins. Co. of Hartford*, 253 Mass. 610. The question we have to decide on this branch of the case is, Was there any evidence to warrant the jury in finding that the condition in the policy was broken and the risk of loss increased?

The Thomson & Kelly Co. was a wholesale dealer in general merchandise, particularly leather and textile goods. The company carried a large stock of clothing and various commodities, much of it purchased from the United States government after the armistice. The merchandise was stored in a building with wooden floors, unfinished inside with the rafters exposed. Thomson & Kelly Co. occupied part of the second floor and all of the third, fourth and fifth floors. The merchandise on the fourth floor was mostly jerkins in burlap bags and some noil yarn. In order to exterminate moths the Thomson & Kelly Co. used naphthalene flakes and idico. The last time the naphthalene was used was at least thirty and possibly sixty days before the fire. About three weeks before the fire, it was discovered that the naphthalene and idico were not killing the moths. The superintendent of the Thomson & Kelly Co. made inquiries at the army base and was shown a method of using sulphur candles. On the night of July 16, 1923, five to six dozen candles were used in fumigating. The superintendent testified that each candle was placed in the bottom of a metal water bucket containing water to the height of one inch,

which were set along the aisles around the rooms on the
fourth floor about ten feet apart. All the windows and
doors were closed and the candles were then lighted. The
next morning it was found that all the candles, with the
exception of one which did not ignite, were entirely burned.
No trouble arose from this fumigation; the windows were
opened in the morning. On July 18, the night of the fire,
the premises were again fumigated by the same process,
about three dozen sulphur candles being used this time in
the front room of the fourth floor. There was evidence
that the fire was caused by the flame of the sulphur candles
igniting the vapor of the naphthalene and idico. It was
only in two separate instances, on July 16 and July 18, that
the sulphur candles were used, and these occasions were the
only ones when the risk was increased.

A risk may be increased within the meaning of the condi-
tion of the policy, making the policy void, although the risk
is not permanently increased. *Lyman* v. *State Mutual Fire
Ins. Co.* 14 Allen, 329. *Kyte* v. *Commercial Union Assur-
ance Co.* 149 Mass. 116. But these words "situation or
circumstances affecting the risk" "imply something of
duration, and a casual change of a temporary character would
not ordinarily render the policy void under this provision."
*First Congregational Church of Rockland* v. *Holyoke Mutual
Fire Ins. Co.* 158 Mass. 475, 478. A policy is not void under
a condition of this kind because the insured was negligent;
his acts increasing the risk must be more than casual ·or
temporary; ordinary repairs and changes of the premises
insured of a temporary character do not render a policy void
although the property may be exposed to an additional
hazard. *Bouchard* v. *Dirigo Mutual Fire Ins. Co.* 113 Maine,
17. *Angier* v. *Western Assurance Co.* 10 S. D. 82, 87. *Shaw*
v. *Robberds*, 6 Ad. & El. 75. The naphthalene had been used
before the policies were issued and no change in the situation
resulted from its use. It was because of the use of the sul-
phur candles that the risk was increased, and as this was
shown to be a casual or temporary change no question of
fact was presented for the jury to pass on. As matter of
law, "the situation or circumstances" were not so altered,

within the meaning of the insurance contract, "as to cause an increase of such risk." There was no evidence to warrant the finding of the jury, and the judge was right in disregarding it.

The jury answered in the negative the questions "Was the fire caused by the gross negligence of the insured, or either of them," and "Was the fire caused by the reckless conduct of the insured, or either of them?" These questions and answers have not been attacked by the defendants and need not be discussed.

The verdicts are to stand and judgments for the plaintiffs are to be entered in the principal sum of each policy, with interest.

*So ordered.*