CITY OF NEWTON *vs.* REISS ASSOCIATES, INC.
(and a companion case[1]).

Middlesex.    January 4, 1954. — February 1, 1954.

Present: QUA, C.J., LUMMUS, RONAN, WILLIAMS, & COUNIHAN, JJ.

*Fire Prevention.    Inflammable Substance.    Public Safety.*

A factory in which laminated products made out of paper were manu-
factured was used for the "keeping" of phenolic varnish and isopropyl
alcohol, inflammable fluids, within G. L. (Ter. Ed.) c. 148, § 13, as
amended by St. 1951, c. 329, where it appeared that inside the factory
quantities of the fluids usually aggregating two hundred gallons were
from time to time put into and mechanically blended in an open tank
serving as a reservoir from which some of the mixture ran into an
open trough wherein rolls of paper were dipped and impregnated with
the mixture, that the equipment so used was permanently set up,
and that such method of impregnation was an established routine
step in the manufacturing process.

TWO BILLS IN EQUITY, filed in the Superior Court on
October 18, 1951.

The suits were heard by *Morton,* J.

The companion case was a suit brought by the public
buildings commissioner of Newton against Reiss Associ-
ates, Inc., and Newton Plastics Corporation.    The final de-
cree granted certain injunctive relief against the defendant
Reiss Associates, Inc., and dismissed the bill without prej-
udice as against the defendant Newton Plastics Corporation,
reciting that such dismissal was with the consent of the
plaintiff.    The plaintiff appealed from the final decree.

*Matt B. Jones, Jr.,* City Solicitor, for the plaintiffs.

*Hugh S. Boyd,* for Reiss Associates, Inc.

---

[1] The companion case is by the public buildings commissioner of Newton
against Reiss Associates, Inc., and another.

## The First Case.

Ronan, J. The first case is a bill in equity filed October 18, 1951, under G. L. (Ter. Ed.) c. 148, § 17, for a permanent injunction restraining the defendant from keeping, storing, or manufacturing certain explosive or inflammable fluids or compounds in any building or structure located upon a described parcel of land in Newton, in violation of c. 148, § 13, in that the defendant has not obtained a license as required by said § 13, then as amended by St. 1951, c. 329,[1] or from keeping, storing, or manufacturing the said fluids or compounds in quantities not exceeding 156 gallons without a permit from the head of the fire department of Newton or from the State fire marshal as required by the regulations of the board of fire prevention regulations of the Massachusetts department of public safety, hereinafter called the board. The plaintiff appealed from a final decree dismissing the bill.

The defendant is engaged in the manufacture of plastic laminates. It produces laminated table tops made out of paper. Phenolic varnish is brought into the factory in 55 gallon metal drums. Isopropyl alcohol is brought in in 5 gallon cans. A quantity of varnish and a quantity of alcohol aggregating about 200 gallons are put into a 275 gallon tank where they are blended together by a mechanical mixer. About 5% of the mixture consists of the alcohol which has been added for the purpose of thinning the varnish. The 275 gallon tank is open at the top. The flash point of the varnish is 90° Fahrenheit and that of the alcohol is 70° Fahrenheit. From the mixing tank the fluid runs into an open trough having a capacity of 15 to 20 gallons into which rolls of paper are dipped, and after being impregnated with the mixture in the trough, the paper is run through rollers to remove the excess liquid before passing on to drying and other manufacturing processes.

---

[1] See now St. 1953, c. 200.

The defendant began in March or April, 1949, to manufacture plastic laminates at the present location. It had no permit to keep 156 gallons or less of inflammable fluids or compounds in accordance with the regulations of the board, and it had no license from the board of aldermen of Newton, the local licensing authority, as provided in G. L. (Ter. Ed.) c. 148, § 13, except that a license was granted to the Fisher Plastics Corporation in 1946 for the storage of 5,000 gallons of synthetic resin coating solution in 50 gallon steel drums in a building other than one now on the premises. This license was revoked on January 15, 1951, after notice and hearing, for failure to file annually certificates of registration.

The statute, G. L. (Ter. Ed.) c. 148, § 13, as amended, relating to licenses, so far as material, provides, "No building or other structure shall . . . be used for the keeping, storage, manufacture or sale of any of the articles named in section nine, unless the local licensing authority shall have granted a license to use the land on which such building or other structure is or is to be situated for the aforementioned uses . . .. The board may by regulation prescribe the amount of any of the articles named in section nine that may be kept in a building or other structure without a license and registration, or either of them." Phenolic varnish and isopropyl alcohol by reason of their flashing point being below 100° Fahrenheit are included in class A in the regulations of the board as highly inflammable fluids, and by virtue of said regulations "may be kept in a building or other structure without a license or registration, or either of them, provided a permit has been obtained therefor," and provided further that not more than 156 gallons are kept.

There is no dispute concerning the facts. The principal question is whether the handling of the varnish and alcohol by the defendant in the ordinary course of its business in "batches" exceeding 156 gallons constitutes the keeping of the fluids in a building and requires a license under § 13.

The method of impregnating the paper, as observed by

various officials inspecting the plant on different occasions, was not a temporary casual process but was an established and ordinary step in the manufacture of the plastic laminated products. The mechanical equipment as disclosed by the testimony and shown by the photographs has been permanently set up, and the treatment of the paper with this compound of varnish and alcohol was a mere matter of routine. The paper so treated formed the basis for the products manufactured by the defendant. Two hundred gallons are mixed and fed into the trough. The tank serves not only as a mixing receptacle but also as a reservoir. It is reasonable to assume that, if the impregnation of the paper is to continue, the tank must be refilled from time to time and its contents mixed and discharged into the trough in order that the trough may be maintained at its proper level for the treatment of the paper. We do not know how long a tank containing 200 gallons, which is the usual amount placed in it, would last in supplying the trough, but whether for a short or long period of time is immaterial from the point of view of the statute or regulation because the usual and practical operation of the equipment would call for a supply of the compound in the tank during all the time that the manufacturing process is being conducted.

We do not agree, as urged by the defendant, that the keeping of the mixture in the tank in these circumstances was only casual or temporary, or that the use of the mixture was only an isolated event, or that the possession of the mixture in the factory, whether dealing with a single lot of varnish or alcohol or with a series of lots poured into the tank as the needs of the manufacturing process required, was merely a transitory event which did not come within the statute or regulation. Cases arising out of fire insurance policies and determining the effect upon the policy where the risk was increased by the presence of inflammable articles upon the insured premises or articles expressly prohibited by the policy are not in point. See *First Congregational Church of Rockland* v. *Holyoke Mutual Fire Ins. Co.*

158 Mass. 475, 478; *Rabinovitz* v. *National Fire Ins. Co.*
258 Mass. 508; *Thomson & Kelly Co.* v. *United States
Merchants & Shippers Ins. Co.* 263 Mass. 181, 187. These
cases bear a remote analogy to the question here pre-
sented. The use of the premises which the parties con-
templated in making a contract of insurance as bearing upon
the scope of the policy bears little resemblance to the in-
terpretation of a statute or regulation, governing the keep-
ing of the inflammable or combustible material in a build-
ing, which was enacted to protect the public from the
danger of explosions and fires.

The final decree is reversed and a final decree is to be en-
tered granting injunctive relief by restraining the defendant
from violating the statute and regulations, but the pro-
visions of said final decree covering matters specifically men-
tioned in the final decree to be entered in the companion
case shall become effective at the times mentioned in the
decree in the second case.

*So ordered.*

### The Second Case.

This is a bill in equity brought under G. L. (Ter. Ed.)
c. 40, § 30B, as amended, to enjoin the defendants from
using a parcel of land and building situated in Newton in
violation of § 576(A) of the zoning ordinances of the city.
The plaintiff appealed from a final decree enjoining the de-
fendant Reiss Associates, Inc., only to a limited extent.

At the argument before this court, the parties agreed
that the final decree should be affirmed except a new second
paragraph [1] should be substituted for the second paragraph
in the decree entered in the Superior Court. The decree as
so modified is affirmed.

*So ordered.*

---

[1] This new paragraph reads as follows:

2. That the defendant Reiss Associates, Inc., its agents and servants be and
are hereby permanently enjoined from making use of the land and buildings
at 49 Elmwood Street, Newton, Massachusetts, or any part thereof, for the
impregnation of paper or other substances by the use of any fluid or com-
pound which is a class A or highly inflammable fluid or is an inflammable

---

compound under the rules and regulations of the board of fire prevention regulations of the Massachusetts department of public safety, without first installing or equipping said premises with:

1. A completely enclosed metal tank for mixing said fluids or compounds, equipped with an automatic vapor vent and an automatic $CO_2$ smothering system.

2. An enclosed impregnating tank to contain any spillage on each machine in which such fluids or compounds are used, equipped with a vapor exhaust to the outside and an automatic $CO_2$ smothering system.

3. An automatic $CO_2$ smothering system in the drying ducts of each machine in which such fluids or compounds are used.

4. An automatic fog sprinkler system throughout the plant.

5. Explosion venting skylights and windows.

6. If the proper licensing authority in the city of Newton shall issue a license or permit therefor, an approved type tank or approved type tanks for the storage of said fluids or compounds, properly diked to contain the contents in case of rupture of the tanks, and an approved type pipe system for the transportation of said fluids or compounds.

The said defendant, its agents and servants shall have sixty days from the entry of the final decree to comply with the aforesaid provisions; but as to subparagraph 6, if the defendant shall apply for a license or permit within thirty days of the entry of the final decree, then it and they shall have sixty days from the granting of a license or permit upon the said application to comply with said subparagraph 6, but if no such application is filed within thirty days then subparagraph 6 is to become effective sixty days after the date of the entry of the final decree and if an application is filed within thirty days and a license or permit is refused, then subparagraph 6 is to become effective within the said sixty days or upon said refusal, whichever comes later.