**Charles W. WRIGHT, Appellant,**

v.

**M. B. HAGEN REALTY CO., et al., Respondents.**

**No. 47634.**

Supreme Court of Minnesota.

July 21, 1978.

James S. Eriksson, Minneapolis, for appellant.

James M. Rosenbaum, Minneapolis, for respondents.

WAHL, Justice.

This action is brought by a real estate agent to recover commissions allegedly due on a lease-option agreement and to establish the percentage rate for future commissions under that agreement. The jury verdict permitted plaintiff to recover on the commissions claimed to be due but failed to establish the percentage rate for future commissions. Plaintiff appeals from the judgment. We remand with instructions.

Some detailed facts are essential. Charles W. Wright, plaintiff-appellant, became employed as a real estate salesman in 1964 by defendant, a firm engaged in business as real estate brokers. His compensation was based on a commission arrangement. The standard commission of the firm for sales of unimproved land was 10 percent of the sale price and for at least 6 percent of the rents paid. Plaintiff's share regularly received was 4.3 percent of the sale price of unimproved land and 2.58 percent of rentals paid on transactions where he procured the customer. Under certain circumstances not applicable here, a negotiated rate for commissions was applied.

The customer or purchaser in the involved transactions was one Robert Keller. Keller first became known to plaintiff in March 1967. Keller was interested in vacant land for the development of apartment buildings. Plaintiff sold Keller certain property of the defendants, the "Astleford" project, on May 5, 1967. Plaintiff was paid the regular commission for this sale. This sale led to plaintiff's showing other property to Keller.

Defendants Mason and Hagen individually owned or controlled considerable property suitable for apartment construction. During the period from January through March of 1968, plaintiff showed Keller various property, particularly the "Ridgeway" property. Negotiation for the sale of this property failed. In the general area of the "Ridgeway" property defendants owned or controlled additional land suitable for apartments. The specific property was 134 acres of contiguous unimproved land, which plaintiff claimed he showed to Keller in March 1968. It was also represented by plaintiff that Keller was interested in the property if it could be rezoned and sewer and water obtained. Plaintiff testified that defendant Mason wanted to proceed with the rezoning on a piecemeal basis, starting with a portion referred to as "19 Acres," with the understanding that Keller would have the first right to buy additional land. A purchase agreement was executed by Keller in March 1968, involving the "19 Acre" tract. The purchase agreement contained provisions for rezoning and sewer and water service. Mason handled the rezoning. Plaintiff attended some of the rezoning hearings, which was finally approved in October 1968. The property identified as the "19 Acre" tract was deeded in January 1969 by defendant to Keller. Plaintiff received his regular commission for this sale in January 1969.

The foregoing transactions were presented by plaintiff to establish that he introduced Keller to the defendants and the involved property. This action was to recover for the unpaid commission which arose out of a subsequent transaction.

After completion of the sale of the "19 Acres," plaintiff was informed by Mason that he had worked out an arrangement with Keller to buy the rest of the tract. This was accomplished by an agreement between the individual defendants and Keller designated as a lease option agreement, dated November 30, 1970. The land involved in the lease option agreement covered 115 acres contiguous to the "19 Acres."

The land was divided into eight phases by the lease option agreement. Pursuant to the agreement, at least one phase had to be leased by May 1, 1971, and at least one each subsequent May 1, and all by May 1, 1977. Keller, the lessee, was granted the option to buy two designated phases in 1973. Rent was required to be paid as to each designated phase. Other details of the lease option agreement are not essential to this decision.

In 1969, and prior to the creation of the lease option agreement, plaintiff established by documents that Keller agreed to buy from defendant certain land described

as Greenbriar Lots 1 and 2. This land is contiguous to and southwest of the "19 Acres" and part of the 115 acres later placed under the lease option agreement. The sale was not completed in 1969. This contract to purchase was rescinded and the land merged into the lease option agreement.

In any event, on November 13, 1973, the property designated as Phase One of the lease option agreement (Greenbriar Lots 1 and 2) was conveyed by deed by the defendant to Keller Investment Company. The price was $357,533.10. No commission was paid to plaintiff on this sale or on the rents paid by Keller to defendant. The rents paid pursuant to the lease option agreement amounted to $118,594.83. The rate of the commission for sales and rents paid was not seriously disputed by the defendant. This suit was brought to recover the commission due on this sale of November 13, 1973, and the rents paid up to December 1975. In addition to the commissions for rents and the purchase, the suit was for specific performance on any subsequent sale to Keller by defendants pursuant to the lease option agreement.

■ The controlling legal principle is not disputed by the parties and is set out in defendant's brief as follows:

"  *  *  * All [the cases] stand for the proposition that if a broker produces a willing buyer and a willing seller, who, respectively, buy and sell at an agreed price, through the efforts of the broker, the broker is entitled to his commission."

Defendants offered testimony supporting their position that plaintiff had nothing to do with obtaining the lease option agreement. Keller gave corroborating evidence supporting this position. Defendants also argue that the land sold was not even owned by them at the time plaintiff contended he showed the property to Keller.

■ The evidence, however, clearly created a fact issue for the jury. Defendant's motion for a direct verdict was denied. The case was submitted to the jury upon special interrogatories as set forth in the verdict.[1]

In response to Question 2, the jury found that plaintiff was entitled to $3,000 as commission for lease rents paid through December 24, 1973. This figure compares with plaintiff's computation of $3,056, based upon 2.58 percent of the actual lease payments made ($118,594.83), and on their face merely a rounding off of the sums due at that percentage.

In response to Question 3, the jury found that plaintiff was entitled to $15,000 as commission for the property conveyed to Keller on November 13, 1973. This compares with the figure of $15,373.29, based upon 4.3 percent of the actual sale price ($357,533.10), and again on the face is merely rounding off the sum at the claimed percentage.

Questions 4 and 5 were presented to the jury to establish the rate of commission on

1. The verdict returned by the jury is as follows: "We, the Jury empaneled and sworn for the trial of the above-captioned matter, for our Special Verdict answer the questions submitted to us as follows:

QUESTION 1: Is the plaintiff, Charles W. Wright, entitled to commissions resulting from the lease-option agreement dated November 30, 1970?
ANSWER: Yes

If the answer to Question 1 is 'No,' then you need not go any further.

If your answer to Question 1 is 'Yes,' there must be a finding of some amount on one or more of the questions below.

QUESTION 2: The plaintiff is entitled to $3,000 as real estate agent's commission for lease rents paid through December 24, 1975.

QUESTION 3: The plaintiff is entitled to $15,000 as real estate agent's commission for the sale of property which was conveyed to Robert A. Keller on November 13, 1973.

QUESTION 4: The plaintiff is entitled to 0% of the lease rents paid from and after December 25, 1975, pursuant to the lease-option agreement dated November 30, 1970. Please answer Question 4 between 0.00% and 2.58%.

QUESTION 5: The plaintiff is entitled to 0% of the sale price of properties which may be conveyed in the future pursuant to the lease-option agreement dated November 30, 1970.
Please answer Question 5 between 0.00% and 4.3%.

any sales or rents paid in the future arising from the lease option agreement. The answers to Questions 4 and 5, fixing 0 percent as the rate of commission, are challenged by plaintiff on this appeal because the jury, while finding plaintiff had procured a willing buyer and allowing the standard commission on an actual sale made pursuant to the lease option agreement, failed to fix any rate on any future transaction under that agreement.

Plaintiff's Rule 59 motion for a new trial was not timely made. The trial court ruled that it was without jurisdiction to hear the motion and "denied the motion in all respects."

A judgment in favor of plaintiff in the sum of $21,211.01, including accrued interest, was entered. Plaintiff appeals from that judgment. Defendants did not cross appeal. The basic issue before us is whether the answers to Special Verdict Questions 4 and 5 are without support in the evidence, are inconsistent with the answers to Questions 1, 2, and 3, and are, therefore, perverse.

An issue as to whether this court can review on an appeal from the judgment the sufficiency of the evidence to support the verdict is also raised by the defendant.

■ 1. We first address the issue regarding the scope of review. Defendants suggest that because the trial court did not pass on the plaintiff's post-trial motion plaintiff is foreclosed from asserting on this appeal that the verdict is contrary to the weight of the evidence. The law of Minnesota does not support this position. In the case of *Kilty v. Mutual of Omaha Ins. Co.,* 287 Minn. 403, 178 N.W.2d 734 (1970), this court stated as follows:

"On appeal from a judgment where there was no motion for a new trial or judgment notwithstanding the verdict, our review is limited to a consideration of whether the evidence sustains the verdict under any applicable rule of law. *State, by Lord v. Bradac,* 257 Minn. 467, 102 N.W.2d 34; *Kedrowski v. Czech,* 244 Minn. 111, 69 N.W.2d 337; *Nelson v. Swedish Hospital,* 241 Minn. 551, 64 N.W.2d 38; *Phelan v. Carey,* 222 Minn. 1, 23 N.W.2d 10." 287 Minn. 404, 178 N.W.2d 736.

2. The more difficult question is whether the answers to Questions 4 and 5 are contrary to the evidence and are inconsistent with the answers to Questions 1, 2, and 3. We conclude that they are.

The testimony established that Wright introduced Keller to the subject property and an adjoining 19-acre tract; that Keller wanted to buy all of the property subject to rezoning. The 19-acre tract rezoning was completed in 1969, and the tract was sold to Keller. Plaintiff was paid his commission of 4.3 percent of this sale price. The evidence is also uncontradicted that the piece of property giving rise to this litigation was sold by defendants to Keller and paid for by Keller. Before the purchase, some rents were paid by Keller to the defendants. The sale, defendants contend, was made through the lease option agreement which plaintiff had nothing to do with and was procured by defendants without any participation by plaintiff. Defendants also contended they had not acquired the property until shortly before the sale. Documentary evidence showed, however, that defendants had agreed to sell this property to Keller in 1969, but that contract was rescinded when the lease option agreement was signed. The conflicting evidence merely presented a fact issue of whether plaintiff procured Keller as a buyer so as to become entitled to the commission. The only testimony on the subject of the measure of the commission was that of the established rate and that paid to plaintiff for several years.

■ The answers to Questions 1, 2, and 3 are substantially supported by the evidence, particularly the documentary evidence, and are in accordance with applicable law. As this court stated in *Dahlgren v. Olson,* 228 Minn. 379, 37 N.W.2d 438 (1949):

" * * * But the various decisions of this court have established the rule that, if an agent is instrumental in bringing together a proposed purchaser and seller, the fact that the owner himself made the

sale would not release him from his responsibility to the agent for his commission as the procuring cause." 228 Minn. 388, 37 N.W.2d 443.

The answers given by the jury to Questions 1, 2, and 3 of the verdict are not challenged by defendants. It is clear by the answers that the jury determined that plaintiff procured the customer and that, by reason thereof, the lease option agreement was ultimately consummated; and that plaintiff was entitled to commissions on rents and sales proceeds resulting from that agreement.

The submission of Questions 4 and 5 appears to be in response to plaintiff's prayer for equitable relief for enforcement of his claim for specific performance on the balance of his claim for commissions involving any subsequent sale or rents received resulting from the lease option agreement. Any attempt at an explanation of the jury's answers to Questions 4 and 5 would be conjecture.

 The form of special verdict included the following:

"If your answer to Question 1 is 'Yes,' there must be a finding of some amount on one or more of the questions below."

The jury found by Answer 1 that plaintiff was entitled to a commission resulting from the lease option agreement. More specifically, the jury found by the amounts arrived at in answer to Questions 2 and 3 that plaintiff was entitled to 4.3 percent of the sale price of the land sold and 2.58 percent of the rents paid to December 24, 1975. The answers to Questions 4 and 5 that plaintiff is entitled to 0 percentage of subsequent sales proceeds or rents collected are contrary to the evidence and wholly inconsistent with the answers to Questions 1, 2, and 3. The answers should be set aside. In *Majerus v. Guelsow,* 262 Minn. 1, 113 N.W.2d 450 (1962), this court said:

"* * * [A]nswers to special interrogatories or special verdicts are not simply advisory; but at the same time they are no more final than a general verdict. If certain answers find no support in the evidence, the trial judge may set them

aside; his action will be upheld on appeal unless clearly erroneous. *Thomson & Kelly Co. v. United States M. & S. Ins. Co.,* 263 Mass. 181, 160 N.E. 668, 57 A.L.R. 944." 262 Minn. 11, 113 N.W.2d 457.

Accordingly, the case is remanded to the trial court with instructions to change the answers to Questions 4 and 5 to conform to the evidence by inserting the percentage rates used in determining the amounts found due in answers to Questions 2 and 3.

Remanded with instructions.

SHERAN, C. J., took no part in the consideration or decision of this case.